PARTIDO UNIFICACIÓN PUERTORRIQUEÑA TRIPARTITA DE LOS PARTIDOS LIBERAL, LABORISTA Y REFORMISTA, Plaintiff and Appellant, *v.* JOSÉ RAMÍREZ SANTIBAÑEZ ET AL., Defendants and Appellees.

No. 8685. Argued March 5, 1943.—Decided April 5, 1943.

*José Sabater, Angel M. Villamil, Julio Reguero González, Miguel A. García Méndez, Oscar Souffront, Rafael Padró Parés, Hipólito*

*Marcano,* and *Antonio Reyes Delgado* for plaintiff-appellant. *Luis E. Dubón, Félix Ochoteco, Jr.,* and *Benicio Sánchez Castaño,* for defendants-appellees. *M. Rodríguez Ramos, Acting Attorney General,* and *Jesús A. González, Assistant Attorney General,* for the Executive Secretary of Puerto Rico, appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an injunction suit filed by attorneys for the "Unificación," a political party, in the name of said party, the petition being signed by Prudencio Rivera Martínez as President of the same, pursuant to authority granted to him by the Central Committee of the party.

The petition was filed in the San Juan District Court and Judge Córdova ordered that the defendants be summoned and served with a copy of the petition and set a date for the parties to appear to show cause why the writ should or should not be issued, meanwhile issuing a restraining order.

On May 20, 1942, the respondents, Ramírez and Gelpí through their attorneys filed demurrers which was also done by the Executive Secretary, represented by the Attorney General. They also answered separately and the issues were joined.

On July 21, the court overruled the demurrers and dismissed the petition for a preliminary injunction. From August 18 to August 25, 1942, the case was heard on the merits and on November 5 of that same year judgment was entered, dismissing the petition with costs.

The petitioner appealed and on March 5 a hearing was had with the appearance and argument of the case by the appellant and by the appellees, Ramírez and Gelpí, by their respective attorneys.

We will not go into a study of the demurrers, because in our opinion that point was well decided and because, according to the view we have taken of this case, the judgment on the merits should be affirmed.

The petition and the defendants' answers are extensive documents and the evidence introduced by both sides is voluminous—the transcript of evidence contains over 1,200 pages—and very difficult to summarize. The trial judge went through all these documents and evidence with such accuracy that we prefer to transcribe his statement: He said:

"Concerning this case, to which the parties have attached so much importance, there could be said what Mr. Justice Holmes said in his dissenting opinion in the case of *Haddock* v. *Haddock* 201 U. S. 628, L. ed. 894([1]).

"The political party 'Unificación Puertorriqueña Tripartita de los Partidos Liberal, Laborista y.Reformista' was organized June 14, 1940. It adopted regulations, which created a directive body named The Central Committee and an Executive Commission chosen by the Central Committee from among its members. The said regulations provide that the Central Committee shall appoint two secretaries. The President and three Vice-Presidents of the party are elected by an assembly of the party, and the regulations provide for the holding of an assembly on January 26, 1941, for the first election and successive assemblies every three years. With regard to special assemblies, the regulations provide that the same shall be called by the Central Committee.

"An Assembly which, according to the regulations, should have been held on January 26, 1941, was postponed by the Central Committee and was held on February 2, 1941, at Humacao. The defendant, Ramírez Santibáñez, was elected President. The Committee on Resolutions submitted. to. the Assembly for approval, among others, the following resolutions:

" 'That this Assembly shall not consider the proposed amendments to its Regulations, because the same have not been filed in accordance with the provisions of §47 of the Regulations of the Party which requires that every amendment must be stated in the convocation for the assembly, mentioning therein the sections to be amended or the subject matter of the amendment, if it be an addition to them; and it be ordered.

" 'First: That the Central Committee shall appoint a special commission which will study the proposed amendments to the Regu-

---

([1]) "I do not suppose that civilization will come to an end whichever way this case is decided." 201 U. S. 628.

lations, but prior to this, the same shall be referred to the Local Com-mitees; and

" 'Second: That the proposed amendments to the Regulations be submitted to the consideration of a special assembly, which shall be held on one of the days comprised within the last fifteen days of the month of May of the present year, and which will also consider all other matters which, in the opinion of the Central Committee, affect the interests of the party.'

"The evidence for the petitioner tends to show that this Resolu-tion was approved by the Assembly without amendment. The defendants have introduced evidence to the effect that there was some opposition to this Resolution, submitted by the Committee, and that then Félix Ochoteco, President of said Committee, drafted in his own hand-writing a substitute resolution, which the respondents claim was the one approved by the Assembly, and which reads as follows:

" 'That it be ordered by this Assembly that a Special Assembly of the "Unificación Puertorriqueña Tripartita" shall be held, preferably on one of the days comprised within the last fifteen days of the month of May of the present year, or at any other time there-after that the President may designate, and in which Special Assembly there shall be considered all those matters which, in the opinion of the President, affect the interests of the party, and especially the proposed amendments to the regulations which have been brought to the attention of this assembly'.

"The special Assembly was not held in May 1941. On Sep-tember 14, 1941, the Central Committee met at Caguas and decided that a special Assembly should be held not later than January 15, 1942, and authorized the Executive Commission to set the date. This Assembly likewise did not take place in January 1942.

"Believing that the President was refusing to call a meeting of the Central Committee, a group of 23 members of said Committee petitioned the Vice-Presidents to call a meeting. The Vice-Presi-dents, under the provisions of §2 of the Regulations, called an extra-ordinary meeting of the Central Committee, to be held on March 22, 1942, at the Ateneo Puertorriqueño. The meeting was held and the President, who had already called a special Assembly of the party and a meeting of the Central Committee, both to be held April 12, 1942, did not attend. At the said meeting of March 22, 1942, the President was declared 'absent' and Vice-President Rivera Martínez was designated to preside over the party while the Presi-

dent's 'absence' continued. At said meeting it was decided to call a special Assembly of the party, to be held April 5, 1942.

"Two days after the meeting held at the Ateneo, Ramírez Santibáñez amended his convocation for a special Assembly of the party and for a meeting of the Central Committee, and advanced the date therefor to March 29, 1942.

"Two days later, on March 26, 1942, Rivera Martínez called a special meeting of the Central Committee. A majority of the Committee met the next day and declared Ramírez Santibáñez 'incapable' and designated Rivera Martínez to replace him as President.

"On March 29, 1942, the assembly called by Ramírez Santibáñez was held in San Juan. This assembly decided to change the name of the party to 'Partido Liberal Puertorriqueño' and to adopt a star as its emblem. The Executive Secretary, upon the face of this Resolution, made the corresponding entries in his registry.

"During the Assembly there was an attempt to hold a meeting of the Central Committee, in order to ratify the convocation issued by Ramírez Santibáñez: It is obvious that such meeting was not held because there was no quorum.

"The petitioning party contests the Assembly of March 29, 1942, on the ground that it was not duly called and prays that the Executive Secretary restore things to their original status with regard to the name and emblem of the party. They also alleged that Ramírez Santibáñez and Gelpí are usurping the respective positions of President and Secretary, and pray for a writ of injunction to enjoin them from acting as such.

"The allegations and the evidence disclose that Ramírez Santibáñez was elected President of the party at an assembly held at Humacao in February 1941. The Regulations do not authorize the Central Committee to impeach the President. Even if the meetings held by the Central Committee on March 22 and 27, 1942, are valid, its resolutions declaring Ramírez Santibáñez 'absent' and later declaring him "incapable," were of no effect. The evidence discloses that the absence and incapacity attributed to Ramírez Santibáñez by a majority of that Committee are simply an expression of the lack of confidence of that Committee in a President whom that Committee had not elected and whom it was not empowered to oust.

"Ramírez Santibáñez had been President of the party since February 1941. As such he called the Assembly of March 29, 1942. The Regulations do not grant him such authority. But he claims

that the Assembly held at Humacao authorized him to determine the date and place of the next special Assembly. Let us examine the resolution as to this particular approved by the Assembly at Humacao. On this point there is a sharp conflict of evidence.

"Witnesses like Soltero, Padró Parés, Gallart and Rivera Martínez, among others whose veracity the court does not doubt, tell us that the Assembly at Humacao adopted the resolution which was proposed by the Committee on Resolutions. On the other hand, witnesses like Seín, Márquez, Pavía, and Ochoteco, whom we consider equally truthful, assure us that there was a substitute motion and that this was the one approved. Ochoteco identified the handwritten document which is in the possession of the respondent Gelpí, together with other writings which referred to resolutions considered by that assembly or by the Committee on Resolutions, and he assures us that he drafted this document on his own handwriting and that it is the substitute motion which was approved.

"We believe that the resolution approved was the substitute one identified by Ochoteco, that is, the one that delegated to the President the power to call the next special Assembly. Those witnesses for the petitioning party who can not recall the substitute motion drafted by Ochoteco have testified faithfully according to their memory but their memory does not constitute reflection of the truth. This is a very natural thing. The witnesses on both sides were testifying as to an Assembly which had been held a year and a half ago. The principal subject considered at that Assembly was the matter designated by the name, 'normas legislativas.' Everything else was secondary. And not only was the resolution we are considering secondary to other matters considered at that Assembly, but within this same resolution the principal matter was the postponement of the proposed amendment to the regulations, and the resolution now under consideration, which dealt with the issuance of the call for the next special Assembly, and where this was to be held, was a secondary point in the resolution. It is not strange that many of those who were present at this Assembly do not remember everything that happened with regard to the resolution for amendments to the regulations, or that they did not realize that the resolution approved was different in certain respects from the one proposed by the Committee on Resolutions.

"As already indicated, we believe that some of the witnesses on both sides have testified truthfully as to what they remembered with regard to the resolution for amendments to the regulations and the

special Assembly. We decide the conflict in the evidence in favor of the defendants, because we do not believe that the testimony of Ochoteco, Pavía, Márquez, and Seín is invented. And if said evidence were not true, we would have to agree that it, and also the writing identified by Ochoteco as containing the substitute motion approved by the assembly, were both invented. With regard to the petitioners' evidence we believe that the recollection of their witnesses is erroneous. Even in the petitioners' evidence we find certain details which tend to corroborate the defendants' theory. For instance, the witnesses, Aponte and Salvá, remember that there was some opposition to the resolution proposed by the Committee on Resolutions and that there was some argument, although they cannot remember the subject thereof. Rivera Martínez also remembers that there was some argument. No one could logically explain the reason for this opposition and argument. Perhaps it was one of those oppositions and arguments that cannot be explained and that are only the consequence of the desire of a member of the Assembly to address the same.

"We should say that in deciding the conflict in the evidence with regard to the contents of the resolution approved by the Assembly we have not given any consideration to the minute book which was introduced in evidence by the defendants because said book does not contain all the evidence of authenticity required by the regulations of the party.

"Since we have arrived at this conclusion as to what happened at the Assembly held at Humacao, it is clear that Ramírez Santibáñez was authorized by said Assembly to make the call for the assembly of March 29, 1942. This assembly of March 29, 1942, and the decisions there arrived at have not been contested except upon the basis of a defective convocation thereof. Therefore, we must consider as valid the decision of the assembly of March 29, 1942, with regard to the change in the name and the emblem of the party.

"The only thing left for our consideration is that part of the petition which deals with the actions of the respondent Gelpí. Gelpí had been ousted as Secretary by the Central Committee at the meeting held on March 22, 1942, at the Ateneo. We are not certain as to the validity of the convocation for the said meeting. But even assuming that it was valid and that therefore Gelpí was properly ousted from his position as secretary, we must determine if the allegations would justify the issuance of an injunction against Gelpí.

"Allegation number XXIII of the petition states that the respondents Gelpí and Ramírez Santibáñez conspired to make it appear that an Assembly of the party had decided upon the change of name and emblems of the party. Regardless of whether Gelpí is or is not the Secretary, this Assembly was held and the resolution dealing with the name and emplems of the party was approved and therefore Gelpí has a right to insist on the fact that the name and emplems of the party have been changed.

"The same can be said with regard to what is stated in allegation number XXVIII, wherein the petitioners complain that both Gelpí and Ramírez Santibáñez are acting upon the basis of the change in the name and emblems of the party. And with regard to Gelpí's actions as to certain typewriters, tables, voters' lists and money, there is no evidence to justify the issuance of an injunction.

"From the above it is clear that the call for the Assembly of March 29, 1942, was valid and that, therefore, the decision concerning the change in the name and emblems of the party is also valid, and that Ramírez Santibáñez is the President of the party, and although it is not clear whether Gelpí is or is not the Secretary of the party, it does not appear that he is engaged in activities which will cause irreparable damage to the petitioning party, and therefore judgment should be entered dismissing the petition with costs."

Judgment was entered and the petitioners took an appeal to this court. Their brief, which contains more than one hundred pages, discloses a full and intelligent examination of the facts and the law. It assigns four errors as committed by the court below in admitting in evidence exhibits 6, 7 to 30, and 31 of the respondents; in deciding that the assembly held at Humacao on February 2, 1941, adopted a resolution authorizing the President, Mr. Ramírez, to call a special Assembly of the party; in deciding that Ramírez, President of the "Unificación," had legal authority to call the Assembly held in San Juan on March 29, 1942; and in dismissing the petition for injunction.

We shall examine the first assignment of error. The admission of Exhibit No. 31—the minute book of the "Unificación"—should be discarded. We already know the dis-

692

trict judge's statement with regard to it in his opinion and statement of the case.

Exhibit No. 6 is the document which has been transcribed at the beginning of the statement of the case and opinion by the trial court. It was introduced by respondents Ramírez and Gelpí to prove the allegations in their answer as to what was decided by the Assembly at Humacao with regard to the next special Assembly of the party, and the petitioners objected to its admission on the ground that it was self-serving evidence.

Several witnesses testified as to its contents and as to how and why it was drafted and approved. Félix Ochoteco, who was its author, testified in this respect, as follows:

"While the Assembly was considering the desirability of approving the report of the Committee on Resolutions, I was presiding over it and I could notice the different trends that were being manifested for and against it, and then I drafted a substitute motion, while presiding, which I believed would to a certain extent bring harmony in connection with all that argument, but before submitting it to the Assembly, I asked the President of the party if he believed it desirable. He agreed, and the President then stated that he was going to propose a substitute motion. I proposed it through the microphone and it was approved."

The exhibit was properly identified. Its admission in evidence did not constitute error. Petitioners' objection goes more to its probative value than to its admissibility.

▮ Exhibits 7 to 30 were offered in evidence as the originals of the resolutions approved by the Assembly at Humacao. The petitioner objected to their admission on the ground that they did not constitute evidence on the question in issue. The court- conducted an inquiry with regard to their materiality and was told that they were primary corroborative evidence of the oral testimony which had been offered. They were finally admitted because they would aid the court "in determining how good or bad the witnesses' memory was."

Considering all the circumstances of this case, we do not think that the court's action was erroneous. What was done, at most, was to add to the record something which was not necessary. There was no error, but even if there had been, it was not prejudicial.

 The second alleged error deals with the weighing of the evidence. Its decision amounts to a decision of the whole suit. The appellant, discussing it, says:

"We realize the difficulty involved in the exposition and argument of this error. The judge who presided over the court below has a well-established and well-earned reputation before this Supreme Court and before the community.

"The mere fact that this judge weighed the evidence in the manner he did, could lead this court to close the case definitely and not to go into a detailed examination of the evidence any further than would be necessary to ratify the well-established doctrine that this court will not interfere with the fact-finding of the trial judge, unless it is established that he acted with passion, prejudice, or partiality, or committed manifest error in the exercise of this function."

Then they transcribe most of the exposition of the case and the opinion of the district judge, and try, page after page, to contest his reasoning and conclusions by carefully examining the testimony, comparing various parts of it with others, weighing it, and although at certain points they may raise a doubt about it they never are able to destroy it. After a study of the transcript of the evidence, our judicial conscience is satisfied that the views of the trial court stand upon a solid basis, and that of two alternative ways open before us, those views are the safer to follow, taking into consideration all the circumstances which are clearly and expressly disclosed by the evidence and those that can be inferred from the same. The existence of the second error assigned has not been established.

 By the third assignment of error the appellant contends "that even assuming, for the sake of argument, that

the Assembly held at Humacao authorized Ramírez Santibáñez, the President, to designate the date for the next special Assembly, which should preferably take place during the last fifteen days of May or at any other date afterwards, still Ramírez Santibáñez could not do anything except designate this date and was under a duty to call for a meeting of the Central Committee so that this committee would designate the place where the Assembly was to be held and establish the rules for said Assembly, and for it to issue the call therefor. That means, that it is our opinion, that the fact that Mr. Ramírez Santibáñez was authorized to designate the date, did not divest the Central Committee of its exclusive power, in accordance with the regulations, to issue calls for Assemblies or conventions.''

It is true that the party regulations grant the power to convoke special Assemblies to the Central Committee, and that the resolution approved by the party at Humacao only empowered the President to designate the date, but it is also true that the resolution in itself constitutes the convocation of this special Assembly which should ''be held preferably, in one of the days comprised within the last fifteen days of the month of May of the present year or at any other date afterwards that the president may designate.'' The power to choose the place was implicitly granted so that the resolution could be effectively carried out.

The Assembly at Humacao was the Assembly of the party and it was empowered to adopt this decision. Its action with regard to its power to adopt the resolution in question is not challenged and if this resolution is fairly interpreted we cannot arrive at any other conclusion but that it delegated to its newly elected President, in whom they deposited all their confidence, the power to do all that was necessary for the celebration of this special Assembly, which they had decided could take place at the proper time, without the intervention of any other officer or organization of the party.

This interpretation is in harmony with what was understood by those who adopted it and also with the wrong which it tried to correct, that is, to dispense with the necessity of calling a meeting of such a large body as the Central Committee in order that there be a convocation of said Assembly.

The appellants insist that there is an "additional reason" in support of their contention. In this respect, they say in their brief: "Assuming, but not admitting, that the decision of the Humacao Assembly had been to authorize the President to designte the date, even assuming that its purpose had been to authorize him to designate the place and issue the convocation, this authority came to an end when the Central Committee met in Caguas, September 14, 1941, and adopted a resolution to hold a special session, prior to January 15, 1942, and on a day that was to be fixed by the Executive Commission."

The reasoning is sound, but it is not decisive. Upon the face of the authority granted to the President by the Assembly in Humacao, there was no actual need of changing the Executive Commission with the duty of designating the date, but nevertheless it is true that this was done, with the intervention and consent of Ramírez himself.

But if it is kept in mind that this action was taken by the Central Committee, and not by another Assembly, and that the authority was granted to be executed before January 15, 1942, and that date elapsed without this having been done, then we must conclude that this authority lasted only until said date and that the action taken by Ramírez, the President, with regard to the assembly in San Juan being taken afterwards, was in no way affected by said decision.

The "additional reason" lacks, as we have said, any decisive force.

696

The fourth error assigned is dependent upon the existence of all, or at least of one of the first three errors assigned, and as none of them exists, this fourth error does not exist

The judgment appealed from is affirmed.

Mr. Justice De Jesús did not participate herein.